IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LARRY ROGER BAISDEN, II, #298 382, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:17-CV-627-ALB |
| | ) | [WO] |
| CORIZON, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I. INTRODUCTION

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Larry Roger Baisden, II ["Baisden"], an indigent state inmate, for deliberate indifference to his serious dental needs during his incarceration at Kilby Correctional Facility in September 2017. Baisden alleges that despite repeated complaints to medical personnel of severe pain from a toothache, he was told to quit wasting his time and money signing up for sick call because Kilby had no dentist. Doc. 2 at 3–4.[1] Baisden names as defendants Corizon, LLC, the former contract medical care provider for the Alabama Department of Corrections, and Lorraine Graves, a licensed practical nurse employed by Corizon at the time relevant to the allegations in the complaint and amendment thereto.[2] Docs. 2, 6. Baisden seeks monetary damages and injunctive relief. Doc. 2 at 4.

Defendants filed an answer (Doc. 7), a special report (Doc. 13), supplemental special reports (Docs. 23, 29), and relevant evidentiary materials in support of these reports, including

---

[1] All documents and attendant page numbers cited herein are those assigned to the docket in accordance with the court's electronic document filing system.

[2] Baisden named "Nurse Gray" as a defendant in the amendment to his complaint. Doc. 6. Defendants have identified "Nurse Gray" as Nurse Lorraine Graves. Doc. 23-1. Accordingly, for purposes of this Recommendation, the court will refer to this defendant by her correct identity.

affidavits and certified copies of Baisden's medical records, addressing the deliberate indifference claim raised in the complaint. Defendants deny they acted in violation of Baisden's constitutional rights. Defendants also argue  this action is due to be dismissed because Baisden failed to exhaust properly an administrative remedy available to him prior to filing suit. Doc. 7.  Defendants base their exhaustion defense on Baisden's failure to submit any medical grievances regarding the claims presented. Doc. 29-1 at 2–7. In addition, Defendants maintain, and the evidentiary materials, including Baisden's medical records, indicate he received appropriate medical treatment during the time relevant to the matters alleged in the complaint. Doc. 13-1 at 1–26; Doc. 23-1 at 2–4.

The court granted Baisden an opportunity to file a response to Defendants' reports in which he was advised, among other things, to "specifically address Defendants' argument that he [ ] failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA")." Doc. 30 at 1 (footnote omitted). The order advised Baisden his response should be supported by affidavits or statements made under penalty of perjury and other evidentiary materials.  Doc. 30 at 3. The November 16, 2017, order further cautioned Baisden that unless "sufficient legal cause" is shown within ten days of entry of this order "why such action should not be undertaken, . . . the court may at any time [after expiration of the time for his filing a response to this order] and without further notice to the parties (1) treat the special reports and any supporting evidentiary materials as a dispositive motion and (2) after considering any response as allowed by this order, rule on the motion in accordance with law." Doc. 30 at 3 (footnote omitted). Baisden filed a response to Defendants' special report, as supplemented. Doc. 34.

In response to Defendants' exhaustion defense, Baisden argues he exhausted the grievance process by filing two grievances and one grievance appeal.  Doc.  34 at 1. To support their special report, as supplemented, Defendants produced relevant documents in Baisden's inmate medical file and an affidavit from La'Quisha Moore, the Health Services Administrator ["HSA"] at Kilby which refute Baisden's claim he exhausted the institutional medical provider's grievance procedure. Doc. 13-1; Doc. 29-1 at 2–3. Specifically, HSA Moore states that prior to filing this action, Baisden did not submit to her, or anyone to her knowledge, any medical grievance regarding the matter presented in his complaint. Doc. 29-1 While Baisden maintains he exhausted his claims against Defendants, the documents and records before the court demonstrate that during all times relevant to the allegations made, Baisden had access to the institutional medical provider's grievance process but failed to comply properly with the administrative grievance remedy prior to filing this action. *See Jones v. Bock,* 549 U.S. 199, 218 (2007) ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison [medical provider's] requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

 "[A]n exhaustion defense . . . is not ordinarily the proper subject for a summary judgment [motion]; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."  *Bryant v. Rich*, 530 F.3d 1368, 1374-1375 (11th Cir. 2008) (internal quotations omitted); *Trias v. Florida Dept. of Corrections*, 587 F. App'x 531, 534 (11th Cir. 2014) (holding district court properly construed defendant's "motion for summary judgment as a motion to dismiss for failure to exhaust administrative remedies[.]").  Therefore, the court will treat Defendants' special report, as supplemented, as a motion to dismiss.

## II.  STANDARD OF REVIEW

In addressing the requirements of 42 U.S.C. § 1997e exhaustion, the Eleventh Circuit has

> recognized that [t]he plain language of th[is] statute makes exhaustion a
> precondition to filing an action in federal court.  This means that until such
> administrative remedies as are available are exhausted, a prisoner is precluded from
> filing suit in federal court.

*Leal v. Ga. Dept. of Corrs.*, 254 F.3d 1276, 1279 (11th Cir. 2001) (citations and internal quotations

omitted). Furthermore, "the question of exhaustion under the PLRA [is] a 'threshold matter' that

[federal courts must] address before considering the merits of the case," and that cannot be waived.

*Myles v. Miami-Dade Cnty. Corr. & Rehab. Dept.*, 476 F. App'x 364, 366 (11th Cir. 2012)

(quoting *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004)).

"When deciding whether a prisoner has [properly] exhausted his remedies, the court should

first consider the plaintiff's and the defendants' versions of the facts, and if they conflict, take the

plaintiff's version of the facts as true.  'If in that light, the defendant is entitled to have the

complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.'  *Turner*

*v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (*citing Bryant*, 530 F.3d at 1373-74). If the

complaint is not subject to dismissal at this step, then the court should make 'specific findings in

order to resolve the disputed factual issues related to exhaustion.'  *Id*. (*citing Bryant*, 530 F.3d at

1373-74, 1376)."  *Myles*, 476 F. App'x at 366. Consequently, a district court "may resolve disputed

factual issues where necessary to the disposition of a motion to dismiss for failure to exhaust

[without a hearing].  The judge properly may consider facts outside of the pleadings to resolve a

factual dispute as to exhaustion where doing so does not decide the merits, and the parties have a

sufficient opportunity to develop the record." *Trias*, 587 F. App'x at 535. Based on the foregoing,

4

the Eleventh Circuit has rejected an inmate-plaintiff's argument that "disputed facts as to exhaustion should be decided" only after a trial either before a jury or judge. *Id*. at 534.

Upon review of the complaint, Defendant's special report, as supplemented, and the evidentiary materials filed in support thereof, the court concludes that Defendants' motion to dismiss is due to be granted.

### III. DISCUSSION

Baisden challenges the adequacy of medical care provided to him at Kilby in September 2017 for his complaints of dental pain. Baisden alleges that despite repeated sick call requests in which he complained of severe pain from a toothache, a dental nurse told him he was wasting his time and money signing up for sick call because Kilby had no dentist. Doc. 2 at 3–4; Doc. 6 at 1.

Defendants deny these allegations and state that at all time relevant to the issues in the complaint and amendment to the complaint Baisden was seen by medical personnel in response to his sick call requests and that his medical needs were not unnecessarily delayed or denied.[3] Defendants' evidence reflects Nurse Graves confirmed with Baisden during his sick call encounters that an appointment had been made for him to be seen by the dental care provider. The undisputed evidence reflects Baisden was transferred from Kilby prior to his scheduled dental appointment.[4] Doc. 13-1 at 2–26; Doc. 23 1 at 2–4. Defendants also maintain this case against them is subject to dismissal because Baisden failed to exhaust the administrative remedy provided

---

[3]  Baisden's medical records reflect a dentist examined him at Kilby at his intake screening on August17, 2017, at which time the dentist observed Baisden had several missing teeth, two non-restorable teeth, and two cavities. Doc. 13-1 at 2–13.

[4]  Defendants state Baisden was transferred from Kilby on September 25, 2017. Doc. 13-1 at 4. The court takes judicial notice of its own records which reflect Baisden filed a "Notice" on September 20, 2017, in a prior civil action in which he informed the court he was leaving Kilby on September 30, 2017. *See Baisden v. Corizon, LLC*, Civil Action No. 2:17-cv-244-WKW (Doc. 30) (M.D. Ala. 2020).

to him by the institutional medical care provider prior to filing suit as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Doc. 7; Doc. 29-1.

The PLRA compels exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint. Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

> The PLRA strengthened [the exhaustion] provision [applicable to inmate complaints] in several ways. Exhaustion is no longer left to the discretion of the district court, but is mandatory. Prisoners must now exhaust all "available" remedies, not just those that meet federal standards. Indeed, as [the Supreme Court] held in Booth, a prisoner must now exhaust administrative remedies even where the relief sought—monetary damages—cannot be granted by the administrative remedies.

*Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (internal citation omitted).

Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998). "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). However, "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id*. at 1855. Generally, a remedy is "available" when it has "sufficient power or force to achieve an end,

[or is] capable of use for the accomplishment of a purpose." *Booth*, 532 U.S. at 737 (quotation marks omitted). Moreover, "the PLRA exhaustion requirement requires proper exhaustion." *Woodford*, 548 U.S. at 93.

> Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings. . . . Construing § 1997e(a) to require proper exhaustion . . . fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage.

*Id.* at 90–93.  The Supreme Court reasoned that because proper exhaustion of administrative remedies is necessary an inmate cannot satisfy the PLRA's "exhaustion requirement . . . by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]"  or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to him." *Id*. at 83–84; *Bryant*, 530 F.3d at 1378 (holding that prisoners must "properly take each step within the administrative process" to exhaust administrative remedies in accordance with the PLRA); *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (holding that an inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA); *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) (holding that inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." *Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012).

It is undisputed that the health care provider for the Alabama Department of Corrections provides a grievance procedure for inmate complaints related to the provision of medical treatment they receive in prison. The evidentiary material filed reflects Baisden had access to the grievance procedure during his incarceration at Kilby and that no correctional or medical staff at the facility interfered with his ability to file a grievance. Doc. 29-1. Regarding the institutional medical provider's grievance procedure, Defendants' evidence reflects that a grievance procedure is available for inmates to present problems, issues, or complaints they have regarding medical treatment provided at the institutional health care unit. Health care grievance forms are available to inmates at the health care unit or through any correctional officer. The HSA at Kilby is the custodian of all grievances filed by inmates, and the grievances are handled by the HSA or her designee. The medical complaint box is checked daily Monday through Friday for inmate request slips and medical grievance forms. The grievance forms are stamped by an administrative assistance with the date the grievance is received and logged into the system. The processed forms are forwarded to the HSA or her designee who must answer an inmate grievance within ten working day of receipt of the grievance. After a response to the grievance is completed, the grievance form is annotated in the grievance log by the administrative assistant. The original written response to a grievance is kept on file with the grievance log and a copy of the written response to the grievance is provided to the inmate. An inmate may appeal a grievance response which must be answered, in writing, by the HSA within five working days and must be appropriately annotated in the grievance log.  Inmates are provided with a copy of the  completed grievance appeal containing the health service administrator's response. If an inmate is unsatisfied with the HSA's response to the grievance appeal, an in-person meeting must take place with the HSA and any other members of the health care team that may be indicated. If the matter remains

unresolved, a meeting is arranged with the aforementioned individuals and the Warden or the Warden's designee. Doc. 29-1 at 2–11.

The record establishes that Baisden had an administrative remedy available to him at Kilby during his confinement at the facility via the institutional medical provider's grievance procedure. The record includes a copy of a medical grievance form signed by Baisden on September 14, 2017—with the "medical grievance appeal" box checked—wherein he complains of having been to sick call three times regarding his dental pain, being refused medical treatment, and stating he had submitted a grievance.[5] Part B of the document—where the HSA or her designee signs and dates the form and provides a written response to the grievance appeal—is blank. Doc. 2-1 at 1. As explained, the administrative remedy procedure allows the HSA or her designee five days within which to an answer an inmate's appeal grievance. Baisden, however, filed suit on September 15, 2017—the day after he signed, and ostensibly submitted, the grievance appeal form.[6] And as explained, the institutional grievance procedure directs that an inmate unsatisfied with the HSA's response to a grievance appeal must engage in a face-to-face meeting with the HSA and any other members of the health care team who may be indicated. The court, therefore, finds a grievance system was available at Kilby for Baisden's claims, but Baisden failed to exhaust properly the administrative remedy available to him.

---

[5]   The instructions on the inmate grievance form direct inmates to identify the type of grievance they are filing by placing a mark in the box beside the term "Medical Grievance" or "Medical Grievance Appeal." Doc. 2-1 at 1.

[6]   *See Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001) (explaining that "[a]bsent evidence to the contrary in the form of prison logs or other records, [the court must] assume that [the instant complaint] was delivered to prison authorities [for mailing] the day [the plaintiff] signed it . . ."); *Houston v. Lack*, 487 U.S. 266, 271-72 (1988).

The record establishes that Baisden had an administrative remedy available to him at Kilby during his confinement at the institution. Defendants' evidence further establishes Baisden failed to properly exhaust the remedy prior to filing this civil action. Specifically, despite the availability of a grievance procedure and his access thereto, Baisden failed to exhaust the facility's grievance procedure regarding the claims presented for relief. Baisden therefore failed to exhaust properly an administrative remedy available to him during his incarceration at Kilby Correctional Facility before seeking federal relief—a precondition to proceeding in this court on his claims. Baisden's unsupported and refuted allegations do not justify his failure to exhaust this administrative remedy prior to filing his complaint. The pleadings and records further establish that the institutional medical provider's administrative remedy remains available to Baisden and dismissal without prejudice is, therefore, appropriate. *See Ngo*, 548 U.S. at 87-94; *Bryant*, 530 F.3d at 1374-1375 (dismissal for failure to exhaust an administrative remedy when the remedy remains available is not an adjudication of the merits and is without prejudice); *Woodford*, 548 U.S. at 87-94.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motion to dismiss (Doc. 13) be GRANTED to the extent Defendants seek dismissal of this case due to Plaintiff's failure to properly exhaust an institutional administrative remedy prior to filing suit.

2. This case be DISMISSED without prejudice under 42 U.S.C. § 1997e(a).

3.  No costs be taxed.

It is

ORDERED that **on or before July 10, 2020,** the parties may file an objection to the Recommendation. Any objection filed must specifically identify the factual findings and legal

conclusions in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. This Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the Magistrate Judge's findings and recommendations under 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 25th day of June, 2020.

/s/ Jerusha T. Adams
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE